# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

SHERRY VINSON,                     )
                                   )
    Plaintiff,             )
                                   )
v.                                 )    Case No.  CIV-12-844-F
                                   )
CAROLYN W. COLVIN,[1]              )
Commissioner, Social Security      )
Administration,                    )
                                   )
    Defendant.             )

## REPORT AND RECOMMENDATION

Sherry Vinson ("Plaintiff") has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. United States District Judge Stephen P. Friot referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3) and it is now before the undersigned Magistrate Judge. Upon review of the pleadings, the administrative record ("AR") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

# I. Administrative proceedings.

In support of her application for benefits, Plaintiff alleged that her impairments became disabling in August 2008. AR 127-30. Plaintiff's claim was denied and, at her request, an Administrative Law Judge ("ALJ") conducted a hearing. In his January 2011 decision, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. *Id.* at 27. The Appeals Council of the Social Security Administration declined Plaintiff's request for review. *Id.* at 1-5. Plaintiff, through counsel, has sought review of the Commissioner's final decision in this Court. Doc. 1.

# II. The ALJ's findings.

The ALJ found that Plaintiff meets the insured status requirements through December 2012, has not engaged in substantial gainful activity since August 2008, and has severe "cervical spine stenosis, status post fusion; neck sprain; degenerative disc disease of the lumbar spine; right knee and right elbow pain; hypertension; and dysthymic disorder." AR 21. The ALJ also found that Plaintiff has the residual functional capacity ("RFC")[2] for a limited range of light work with exertional and nonexertional limitations, and can perform her past relevant work as a file clerk, data entry clerk, and receptionist. *Id.* at 23-27.

---

[2]     Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

## III. Standard of review.

This Court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). To that end, reversal is necessary if the ALJ failed "'to provide this court with a sufficient basis to determine that appropriate legal principles have been followed.'" *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (citations omitted).

## IV. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If she carries that burden, the ALJ will conduct a RFC assessment at step four to determine

what if anything the claimant can still do despite her impairments. *See* 20 C.F.R. § 404.1545(e); *Andre v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). At the conclusion of step four, Plaintiff once again carries the burden and must show an inability to return to past relevant work. *See* 20 C.F.R. § 404.1520(e); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990).

## V. Plaintiff's claims of error.

While Plaintiff presents multiple claims of error on judicial review, the undersigned recommends remand because of: (1) legal error in the credibility analysis, and (2) the ALJ's failure to acknowledge Plaintiff's obesity or evaluate its effect on her ability to work. Accordingly, the undersigned will not address Plaintiff's remaining claims. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## VI. Analysis.

### A. Legal error in the credibility analysis.

Because the ALJ found that Plaintiff has impairments that can reasonably be expected to produce pain or other symptoms, he was required to give consideration to Plaintiff's subjective complaints. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186, at *1. The ALJ purported to do so,

4

summarizing Plaintiff's testimony and then finding:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR. 24. In support, the ALJ then listed all of the medical evidence. *Id.* at 24-27.[3]

The error lies in the ALJ's failure to affirmatively link that evidence with the credibility findings or explain which of Plaintiff's allegations he disbelieved and why.

---

[3] The ALJ also found that Plaintiff's "described daily activities" were not limited to the extent one would expect because she: (1) "takes care of her two sons," (2) "provides transportation for her younger son," (3) "takes care of her personal needs," (4) "cooks daily and does housework such as cleaning and laundry," (5) "goes shopping once every couple of weeks," (6) "visits with others on the phone," (7) "goes to her friend's house and her mother's house and visits her sister on a regular basis," and (8) "enjoys playing cards and dominoes." AR 26.

Although not the focus of Plaintiff's argument, the undersigned notes that many of these findings do not accurately reflect Plaintiff's testimony. For example, Plaintiff stated that: (1) her oldest son is "graduated" and "working" – thus not requiring her care, (2) she drives infrequently, most often relying on her mother to provide transportation, (3) her younger son has to help her out of bed "three or four times a week" because her back "locks up," (4) she cannot always dress herself or tie her own shoes, and (5) she must sit to cook. *Id.* at 43, 52-53, 55-56. As to the remaining findings, "sporadic performance [of daily activities] does not establish that a person is capable of engaging in substantial gainful activities." *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987).

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, the reasons for credibility determinations "must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 1996 WL 374186, at *4; *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings"(quotation omitted)). In other words, the ALJ must "'explain why the specific evidence . . . led him to conclude claimant's subjective complaints were not credible.'" *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (quotation omitted).

As Plaintiff argues, the ALJ's credibility analysis is flawed. Doc. 13, at 3-4. The initial flaw developed when the ALJ simply summarized medical evidence without identifying how those records influenced his credibility determination. The lack of an "affirmative link" between the medical evidence and the reasons for questioning Plaintiff's credibility is fatal. *See Kepler*, 68 F.3d at 391; *see also Hardman*, 362 F.3d at 679 (reversing in part because "the ALJ failed to link or connect any of the factors he recited [in rejecting claimant's credibility] to any evidence in the record"). Indeed, the Tenth Circuit has

specifically rejected similar ALJ findings in *McFerran v. Astrue*, 437 F. App'x 634 (10th Cir. 2011). There the court held:

> The ALJ's decision sets forth the criteria for evaluating allegations of symptoms and credibility, summarizes portions of Mr. McFerran's testimony, and restates entries in the medical record. But it provides no explanation of how the ALJ *applied the criteria to the testimony and medical records.* The decision does not "contain specific reasons for the finding on credibility, supported by the evidence in the case record" and is not "sufficiently specific to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight."

*Id.* at 637 (emphasis added) (quotation omitted).

As in *McFerran*, the ALJ here simply summarized Plaintiff's subjective complaints and then summarized the medical evidence. But he did not explain how that evidence related to Plaintiff's subjective complaints or how it influenced the ALJ to find Plaintiff less than entirely credible.

The ALJ then compounded the error by simply noting that the evidence supported "some of the alleged symptoms." AR 24. Because the ALJ failed to explain which subjective allegations he believed and which he did not, the court cannot sufficiently review the credibility analysis. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (remanding in part on grounds that the ALJ found the claimant not credible but did not "explain and support with substantial evidence which of her testimony he did not believe and why").

The Commissioner nevertheless seeks affirmance on two grounds. First,

she argues that the ALJ considered all of the subjective medical evidence. Doc. 14, at 4. But this defense ignores Plaintiff's real complaint – that the ALJ did not thereafter affirmatively link that evidence to the credibility analysis.

Second, the Commissioner relies on *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012) to argue that the credibility findings were sufficient. Doc. 14, at 4. In *Keyes-Zachary*, the Tenth Circuit held that it is not necessary for an ALJ to state "'I find this statement credible' or 'I find this statement not credible'" for each of the claimant's subjective complaints so long as it is otherwise clear that the ALJ was discounting a specific complaint. *Id.* at 1169-70. In that case, the ALJ made it clear through the use of qualifying statements. For example, the ALJ stated: "'The claimant also reported pain in her lower back and neck . . . . *However*, once again, the claimant reported she has not undergone any surgery on her neck and back.'" *Id.* at 1170 (emphasis in original).

In contrast, here, the ALJ did not make qualifying statements and did not otherwise indicate which of Plaintiff's allegations he credited, which he did not, and why. AR 23-26. Thus, the undersigned finds *Keyes-Zachary* to be distinguishable in this instance.

In sum, Plaintiff "'is entitled to have [her] nonmedical objective and subjective testimony . . . evaluated by the ALJ and weighed alongside the

8

medical evidence.'" *Kepler*, 68 F.3d at 390 (quotation omitted). Because the ALJ failed to adequately link the credibility findings to the evidence of record and otherwise failed to adequately articulate those findings for meaningful review, the undersigned recommends that the decision be reversed and the matter remanded for further proceedings.

## B. The ALJ's failure to acknowledge or evaluate Plaintiff's obesity.

Reversal is also necessary based on the ALJ's failure to acknowledge or evaluate Plaintiff's obesity.

At the hearing, Plaintiff testified that she is 5' 4" tall and weighs 223 pounds and had been approximately the same weight when she applied for benefits. AR 40-41; *see also id.* at 146. At that height and weight, Plaintiff has a body mass index ("BMI") of 38.3, which makes her "obese" at "Level II." SSR 02-1p, 2002 WL 34686281, at *2 (recognizing the National Institute of Health BMI definitions).[4] Indeed, the medical record establishes that since the onset of her impairments, Plaintiff's weight has fluctuated between 184 pounds, with a BMI of 32, to 245 pounds, with a BMI of 42. AR 207, 215, 258, 259, 268, 296. Thus at her lowest weight Plaintiff was "obese" at "Level I," and at her heaviest, Plaintiff suffered from "'extreme' obesity" at "Level III." SSR 02-1p, 2002 WL

---

[4]     *See also* National Institute of Health, BMI Calculator:
http://www.nhlbi.nih.gov/guidelines/obesity/BMI/bmicalc.htm.

34686281, at *2.

According to Plaintiff, the ALJ did not acknowledge the medical evidence of her obesity, nor did he consider its effect on Plaintiff's ability to work. Doc. 13, at 14-18. The undersigned agrees and finds that the failure to do so is reversible error.

An ALJ does not need to discuss every piece of medical evidence; however, he must discuss any significantly probative evidence he rejects. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). In other words, the ALJ is not entitled to pick and choose which medical evidence he relies upon. *See Keyes-Zachary*, 695 F.3d at 1166 (citation omitted). Here, the medical record is replete with references to Plaintiff's weight and BMI status. And, that evidence is potentially significantly probative because Plaintiff's obesity, when considered in combination with her other impairments, could effect her ability to work.

A claimant's obesity bears on whether her other impairments prevent past relevant work or other work that exists in significant numbers in the national economy. *See* SSR 02-1p, 2002 WL 34686281, at *3. While obesity alone may not be severe, the impact from its combination "with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *1. For that reason, an ALJ must consider obesity throughout the disability determination process and explain any related findings. *Id.* at *1, *7. This is

particularly important where, like here, the claimant's severe impairments include musculoskeletal impairments and depression. *See id.* at *3 (recognizing that obesity can complicate musculoskeletal body symptoms and can contribute to depression). Indeed, the regulations instruct that:

> The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q) (2008).

The Commissioner does not dispute that the ALJ failed to discuss the relevant medical evidence or engage in the proper analysis. Instead, she argues that the error is not reversible because "Plaintiff could ambulate with a good gait and pace, and she had good use of her arms, hands and fingers" and thus "at the very least she could perform her past sedentary jobs." Doc. 14, at 11. However, obesity can also cause limitations in sitting, *see* SSR 02-1p, 2002 WL 34686281, at *6, and the ALJ found Plaintiff capable of sitting for 6 hours in an 8-hour workday. Thus, the reliance on Plaintiff's "good gait and pace" and her use of her upper extremities does not cure the error. Further, "there is nothing in the decision indicating how or whether [Plaintiff's] obesity influenced the ALJ in

setting [the RFC] restrictions." *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (rejecting the Commissioner's suggestion that the ALJ's failure to consider the claimant's obesity was harmless because the ALJ had found her capable of sedentary work).

In sum, the ALJ failed to acknowledge potentially significantly probative evidence and did not consider the effect of Plaintiff's obesity, particularly in combination with her musculoskeletal impairments and depression, on her ability to work as required in SSR 02-01p. For these reasons, the undersigned recommends reversal. *See DeWitt*, 381 F. App'x at 785-86; *see also Hamby v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008) (reversing in part because "[i]n spite of the teachings of SSR 02-1p, the ALJ provided no discussion of the effect of obesity on [the claimant's] other severe impairments"); *Hammack v. Colvin*, CIV-12-83-SPS, 2013 WL 956981, at *3-4 (E.D. Okla. March 12, 2013) (unpublished opinion and order) (reversing on grounds that the ALJ failed to consider the claimant's obesity under SSR 02-1p and explaining that even if the obesity was not a severe impairment it had to be considered in combination with the other impairments).

## VII.  Recommendation and notice of right to object.

For the reasons discussed above, it is recommended that the Commissioner's decision be reversed and the matter remanded for further

proceedings.

The parties are advised of their right to object to this Report and Recommendation by the 12th day of June, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 22nd day of May, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE